UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2008 JUL 24 P 2: 16

ELDRIDGE EDWARDS

VERSUS

WILLIAM H. BISOR, GROCERS SUPPLY
COMPANY, TRAVELERS INDEMNITY
INSURANCE COMPANY, ILLINOIS
UNION INSURANCE COMPANY

CIVIL ACTION

BY DEPUTY CLERK

NO. 06-715-JVP-DLD

## RULING ON MOTIONS

These matters are before the court on five motions by defendants, William H.

Bisor, Grocers Supply Company, and Travelers Indemnity Insurance Company

("Defendants"), and two motions by plaintiff, Eldridge Edwards.[1]

Defendants have filed a motion to exclude the testimony of plaintiff's expert,

Thomas Truss (doc. 64), and plaintiff has opposed the motion (doc. 75).  Defendants

have filed an alternative motion to exclude the testimony of Thomas Truss insofar

as it concerns the visibility test conducted on January 16, 2008 (doc. 65).  Plaintiff

has opposed that motion (doc. 76), and defendants have replied to the opposition

(doc. 82).  Defendants have filed a motion to exclude the testimony of plaintiff's

expert, Kelley Adamson (doc. 69) and plaintiff has opposed the motion(doc. 85).

Defendants have filed a motion to exclude the expert report of Kelley Adamson

dated June 25, 2008, and the DVD of the visibility study conducted on June 22, 2008

---

[1]Defendant, Illinois Union Insurance Company was dismissed from this action without prejudice on May 10, 2007 (doc. 16).

1

(doc. 79), and plaintiffs have opposed the motion (doc. 80).  Defendants have also filed a motion to exclude the testimony of plaintiff's vocational rehabilitation expert, Stephanie Chalfin (doc. 73) and plaintiff has opposed that motion (doc. 84).

Plaintiff has filed a motion to exclude medical records and testimony with regard to marijuana (doc. 74) and that motion has been opposed by defendants (doc. 81).  Plaintiff has also filed a motion to exclude the testimony of defendants' expert, Bill Nalle (doc. 78) and defendants have opposed that motion (doc. 83).

Jurisdiction is based on 28 U.S.C. § 1332, the matters are now submitted, and there is no need for oral argument.

## FACTS AND PROCEDURAL HISTORY

This action, scheduled for trial on August 18, 2008, was originally filed in the United States District Court, Middle District of Louisiana, on September 25, 2006 (doc. 1).  Plaintiff alleges that Bisor was driving a tractor-trailer rig at a high rate of speed on the right shoulder of Interstate 10 when, due to the negligence and fault of Bisor, the rig he was driving collided with and injured plaintiff who was attempting to reenter his car on the shoulder of the interstate.  Plaintiff further contends that, as a result of the collision, he suffered injuries including, nonexclusively, a fracture of the spine, fractures of the right arm, severe fractures to his left leg, great pain and suffering, the need for surgical repairs and such other injuries and losses as will be proven at trial.  (Original complaint, ¶ 7-8, 10).

2

The complaint also alleges that the collision and injuries were the direct result of the negligence and legal fault of Grocers Supply Company because, inter alia, it: 1) failed to exercise reasonable care in investigating, hiring, instructing, training, and/or supervising its drivers; 2) failed to have, or implement, policies or procedures which would have prevented the accident; 3) had control or supervision or employment of William H. Bisor, who, at the time of the accident, was acting within the course and scope of his employment with Grocers Supply Company and/or who was on a mission for the benefit of Grocers Supply Company.  (Original complaint, ¶ 11).

The complaint further contends that defendant, Travelers Indemnity Company, is liable for plaintiff's damages because, prior to the collision, it had issued a liability insurance policy to the owner of the vehicle driven by Bisor.  Plaintiff contends that the Travelers Indemnity Company policy was in effect at all pertinent times and provided coverage for acts of negligence and claims for injury such as those asserted in this suit.  (Original complaint, ¶ 13).

## ADMISSIBILITY OF EXPERT TESTIMONY

The admissibility of expert testimony is governed by Federal Rule of Evidence 702[2] and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, (509 U.S. 579) (1973),

---

[2]Federal Rules of Evidence 702 provides:
   If scientific, technical, or otherwise specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of

which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable.  This gatekeeping role extends to all expert testimony, whether scientific or not.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).  Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.  Rule 403 of the Federal Rules of Evidence provides that the court may exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.[3]

## Defendants' Motions to Exclude the Expert Testimony of Thomas Truss

Defendants have filed two motions to exclude the testimony of plaintiff's expert, Thomas Truss.  One motion seeks to exclude his testimony in its entirety (doc. 64), whereas the other seeks the exclusion of his testimony only insofar as it concerns a visibility test conducted on January 16, 2008 (doc. 65).

---

an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

[3]Rule 403 of the Federal Rules of Evidence provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Plaintiff maintains that he has "specifically limited Mr. Truss' testimony to the standard of care applicable to Mr. Bisor as he traveled within one-half (½) mile of the accident scene," and "established his qualifications to so testify about the scenario." Plaintiff emphasizes that Truss "does not purport to reconstruct the accident" and does not "purport to be an expert [] in other fields such as biomechanics, visual acuity, highway construction and design, or medic[ine]." Thus, according to plaintiff, Truss's testimony "is limited to his expertise which, in this case, deals specifically with the duty to perceive a hazard ahead and to initiate the proper evasive maneuver." (Doc. 75, pp. 4, 7).

Defendants contend that Truss' testimony does not meet the requirements of Federal Rules of Evidence 702 and *Daubert* because it is not based upon "scientific, technical or other specialized knowledge which will assist the trier of fact to understand the evidence or to determine a fact in issue" and it is "not based on sufficient facts or data and the product of reliable principles and methods which he has applied reliably to the facts of the case."  Defendants further contend that the proposed testimony should be excluded pursuant to Rule 403 of the Federal Rules of Evidence because it will result in "confusion of the issues and a misleading of the jury." (Doc. 64-2, p. 2).

"[W]hether defendant owed plaintiff a duty is properly a question of law for the court to determine, while the question of whether plaintiff breached that duty is a determination for the jury."  *Stobart v. State, Through DOTD*, 617 So.2d 880

(La.1993).  The standard of care to be exercised by a commercial truck driver to avoid pedestrians is found in the Louisiana Revised Statutes.  *See Foster v. Clarendon National Insurance*, 753 So.2d 968 (La.App. 2 Cir. 2000) (where the court applied LSA-R.S. 32:214 to determine the standard of care in a case where a commercial truck driver struck and killed a pedestrian on the roadway).

Section 214 provides:

> Notwithstanding the foregoing provisions of this Part, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway.

Louisiana law recognizes that commercial truck drivers are generally held to a higher standard of care than motorists at large.  *See Davis v. Witt*, 851 So.2d 1119, 1128-29 (La.2003) (recognizing that a heightened standard applied where a truck driver handled a load that posed a particular danger to the public).  However, the plain language of LSA-R.S. 32:214 demonstrates that it applies to *all* drivers, including commercial truck drivers.

Moreover, the duty to exercise due diligence to observe and avoid pedestrians on the roadway allows a jury to determine negligence by the application of common sense, rendering expert testimony unnecessary in the present case.  *See Krummel v. Bombardier Corp.*, 206 F.3d 548, 558 (5th Cir. 2000) (citing *Greenhouse v. C.F. Kenner Assoc. Ltd. Partnership*, 723 So.2d 1004, 1008 (La.App. 4th Cir.

1998)(stating that   expert testimony is appropriate to establish the applicable standard of care where lay persons cannot find or infer negligence by applying common sense in a negligence case founded on Louisiana law).

Having determined that the applicable standard of care is to be found in a Louisiana statute, the court concludes that the proposed testimony of Thomas Truss regarding the standard of care is unnecessary and therefore inadmissible pursuant to Federal Rules of Evidence 401.[4]

Defendants' alternative motion seeks to exclude the proposed testimony by Thomas Truss concerning a "visibility test"[5] conducted on January 16, 2008.  As noted *supra*, the testimony of Thomas Truss was proffered for the sole purpose of establishing the applicable standard of care and that testimony has been found inadmissible.  Therefore his testimony is not admissible to establish the conditions that may have been present at the time of the alleged accident, or for any other purpose.

**Defendants' Motions to Exclude the Expert Testimony of Kelley Adamson**

Defendants have filed two motions seeking to limit the presentation of evidence by plaintiff's accident reconstruction expert, Kelley Adamson.  One motion

---

[4]Rule 401 of the Federal Rules of Evidence provides:
"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

[5]The term "visibility test" is not a term that this court is familiar with and the court is unsure of what such a procedure entails.

seeks exclusion of the supplemental expert report of Kelley Adamson dated June 25, 2008, as well as a DVD recording of the June 22, 2008 "visibility study"[6] upon which the supplemental report is based (doc. 79).  Defendants maintain that exclusion of the supplemental report and DVD recording are necessary because the plaintiff's deadline for submission of expert reports was August 15, 2007 (*see* doc. 29).  Thus, the supplemental expert report was generated over nine months past the discovery deadline.[7]

Rule of Civil Procedure 26(a)(2)(C) provides that "[a] party must disclose [expert reports] at the times and in the sequence that the court orders."  Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply information on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."

Plaintiff contends that exclusion of the report and DVD would be improper because the new "visibility test" "cured the very objections that the defendants had raised with regard to the January 16, 2008 visibility test."  Plaintiff also alleges that defendants will not be prejudiced by use of the June 22, 2008 "visibility test," or by introduction of Kelley Adamson's June 25, 2008 supplemental reports, because this

---

[6]The court assumes that a "visibility test" and a "visibility study" refer to the same or similar procedures.

[7]Defendants allege that, as of June 30, 2008, they had still not received a copy of the DVD recording of the "visibility study" (doc. 79-2, p. 5).

new test "confirms the calculations made by Mr. Adamson all along." (Doc. 80, pp. 5-8).[8]

By plaintiff's own admission, however, the June 22, 2008 test is new test. Plaintiff has stated no reason why this new test could not have been conducted earlier so that an expert report based on the test could have been disclosed within the discovery deadline.[9]  Thus plaintiff has failed to provide substantial justification of his failure to meet the requirements of Rule 26(a)(2).

Moreover, admission of this evidence at such a late date would not be harmless.  Though plaintiff focuses on the fact that the evidence may be said to confirm the prior conclusions of his expert, defendants must consider whether the evidence is "the product of reliable principles and methods" that have been applied "reliably to the facts of the case."  *See* Fed.R.Evid. 702.  Defendants will not have sufficient time prior to trial to fairly analyze the methodology used in this test so as to allow them to conduct a fair defense.

Because the June 25, 2008 supplemental report of plaintiff's expert, Kelley Adamson, was not disclosed as required by Rules of Civil Procedure 26(a)(2)(C) and

---

[8]Plaintiff also contends that the evidence generated by this test should be admissible because defendants conducted a "visibility test" in May, 2008.  However, as plaintiff notes, defendants have stated that their expert will not render an opinion on that test at trial.  (Doc. 80, p. 10).  Plaintiff also suggests that defendants may call a rebuttal witness who participated in their May, 2008 test.  For the reasons stated herein, the results of defendants' May, 2008 test would also be inadmissible.

[9]The new test was conducted over nine months after the discovery deadline and within two months of the scheduled trial date.

plaintiff has failed to substantially justify that failure or to show that admission of the evidence would not prejudice defendants, the court concludes that the June 25, 2008 supplemental report and the DVD recording of the June 22, 2008 "visibility test" are inadmissible.

Defendants have also filed a motion to exclude Adamson's proposed testimony that, in his opinion, plaintiff was attempting to close, or had closed but not latched, the door of his vehicle at the time of the alleged accident (doc. 69). Defendants maintain that this testimony should be excluded because: (1) it is inconsistent with the testimony of plaintiff and an eye-witness; (2) it has its origins in the "visibility test" conducted on January 16, 2008 which is the subject of an alternative motion filed on behalf of defendants, and (3) Adamson's expert report did not mention this opinion.

Defendants cite no rule or caselaw that suggests an expert's opinion must precisely conform with the statements of an eye-witness. Moreover, such a rule would be impractical as fact-witnesses often contradict one another. "[I]n determining the admissibility of expert testimony, the district court should approach its task 'with proper deference to the jury's role as the arbiter of disputes between conflicting opinions.'" *U.S. v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996). As noted *infra*, Adamson's deposition indicates that he does not discount the testimony of the eye-witness and plaintiff, but attempts to reconcile that testimony with other observable facts. Therefore, the court concludes that the proposed

testimony is based on sufficient facts and data that it may "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591-92.

Likewise, the fact that Adamson's opinion may be based in part on the January 16, 2008 "visibility test" does not mean that his opinion is inadmissible. Despite defendants' suggestion otherwise, no party has contested the admissibility of the January "visibility test."[10]  However, even if the January "visibility test" was inadmissible, something the court does not here conclude, the court notes that Adamson provided his opinion of the position of the plaintiff and car door in response to a direct question by defense counsel at his deposition and stated that his opinion was also based on evidence already available to both parties.  When asked if he accepted the testimony of plaintiff and Trenece Fobb as establishing where plaintiff was and what he was doing at the time of the accident, Adamson replied:

> Well, I do with limitations.  And the reason why is this, we know that there appears to be no marks on the end of the door as in a direct contact that would have, for example, bent the metal in such.  The officers did not make any note of any marks on the car.  And so that is what's interesting.  Given that Ms. Fobb's description of

---

[10]Defendants state that they have previously filed an "Alternative Motion to Exclude at Trial any Evidence or Testimony of the 'Visibility Test' Conducted on January 16, 2008" and state that they will not reiterate their objections in this memorandum, but have attached a copy of the alternative motion and adopt and re-urge those portions that bear on the relevance of the visibility test.  The attached motion, however, is captioned "Defendants' Alternative Motion In Limine to Exclude Testimony by Thomas Truss Based on the Visibility Test Conducted on January 16, 2008." That motion and the memorandum in support address only the admissibility of testimony by Thomas Truss insofar as it is based on the "visibility test" of January 16, 2008.  It is addressed *supra*.

where she was or where Mr. Edwards was standing, and that he was right next to the vehicle, that either one or two things occurred.  And that is he either closed the door enough to where he was able – when he was struck he went by it, but not latching the vehicle, or that he stepped backwards.  But Ms. Fobb never said that he stepped backwards.  She's very clear that he was standing and that also every indication whatever you read, everything that she says, he's skinnying in the door, that he's attempting to step in.   There's nothing that says he stepped backwards and into the lane. And I really feel that it is consistent that – and I know that Mr. Edwards doesn't say, but I think he must have maybe realized this and I think what may have happened was he was actually in the process of closing the door enough that when he was struck, he went by the door.

(Deposition of Kelley Adamson, p. 65-66).

"Rule 26 increases the quality of trials by better preparing attorneys for cross-examination, minimizing surprise, and supplying a helpful focus for the court's supervision of the judicial process.  In short, Rule 26 promotes fairness both in the discovery process and at trial."  *Thiebeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992).  Adamson's opinion regarding the position of the car door at impact is not rendered inadmissible simply because that specific opinion was not stated in the expert report. There is no suggestion of bad faith or that the opinion will surprise or unfairly prejudice plaintiff, particularly since plaintiff questioned Adamson regarding this opinion during his deposition. Ultimately the jury will decide these factual disputes.

The court therefore finds no reason to exclude Adamson's proposed testimony that, in his opinion, plaintiff was attempting to close, or had closed but not latched, the door of his vehicle at the time of the alleged accident.

**Defendants' Motion to Exclude the Testimony of Stephanie Chalfin**

Defendants have filed a motion to exclude any testimony by plaintiff's vocational rehabilitation expert, Stephanie Chalfin, which reflects her conclusion that plaintiff will require attendant care (doc. 73). Defendants' memorandum in support of the motion however is an exact copy of the motion, consisting only of a caption and single paragraph (*see* doc. 73-2). Plaintiff suggests that the motion is grounded on an assertion that Dr. Hatzis did not agree with Stephanie Chalfin's opinion that plaintiff will need assistance with the activities of daily living.[11]

After an evaluation of attached exhibits, the court concludes that defendants' motion lacks merit.[12] Dr. Hatzis did state that, from an orthopedic standpoint, he saw no need for a personal attendant to assist plaintiff with his hygiene (doc. 84, Ex. D). However, he did not state that plaintiff will not require attendant care in the future. Thus, the court can find no reason to exclude Stephanie Chalfin's proposed testimony. Again, this is a jury issue.

_____

[11]Dr. Nick Hatzis is the plaintiff's treating orthopaedic physician (*see* doc. 84, n. 3).

[12]The exhibits submitted with the motion are apparently miscaptioned. Exhibit C contains a portion of Stephanie Chalfin's deposition transcript but is captioned as the transcript of Dr. Hatzis' deposition. Exhibit D is captioned as the transcript of Stephanie Chalfin's deposition, but actually contains a portion of the transcript of Dr. Hatzis' deposition.

**Plaintiff's Motion to Exclude the Testimony of William Nalle**

Plaintiff has filed a motion to exclude the testimony of defendants' accident reconstruction expert, William Nalle, on grounds that it is contrary to the testimony of an eye-witness, not based on sufficient data and information to meet the reliability requirements of Rule 702 and *Daubert*, and deficient in other regards (doc. 78).

Plaintiff contends that Nalle ignores the facts of the case and bases his opinion on his own presupposition that the driver's door was fully open and plaintiff was standing outside of the door, in the roadway, at the time of the accident (doc. 78-2, pp. 4-6). He further contends that Nalle's proposed testimony exceeds the scope of that which is permissible of an accident reconstruction expert because Nalle proposes to state that "it is much easier for a pedestrian to see a lighted tractor-trailer than it is for the truck driver to see the pedestrian" and "it would have been very easy for [plaintiff] to get out of the road or simply stay in front of his car. (doc. 78-2, pp. 4-7). The court agrees that statements such as that fall outside the scope of accident reconstruction, *i.e.*, what happened. Accordingly, such opinions will not be allowed at trial.

The court concludes that Nalle's proposed testimony regarding the position of the door is sufficiently tied to, and supported by, the facts of the case that it will aid the jury to determine a fact in issue.[13]  See *United States v. Downing*, 735 F.2d

---

[13]This evidence is relevant to whether the tractor-trailer rig was traveling on the shoulder of the road as alleged by plaintiff's complaint.

1224, 1242 (3rd Cir. 1985) (noting that Rule 702 requires not only  that expert testimony be based on sufficient facts and data to be reliable, but that it also be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute").

Nalle, however, like Thomas Truss or any other expert, may opine only within the confines of his qualification as an expert.  Nalle is proffered as an accident reconstruction specialist, as is plaintiff's expert, Adamson.  Nalle's testimony will be limited to accident reconstruction, as will Adamson

## Plaintiff's Motion to Exclude Medical Records and Testimony Regarding Marijuana

Plaintiff has filed a motion to exclude any reference to alleged marijuana use by plaintiff as well as a toxicology report conducted shortly after the accident which indicated that plaintiff had a detectable level of THC in his urine[14] (doc. 81).

Defendants concede that the evidence of marijuana use is not admissible to show that plaintiff was impaired by marijuana at the time of the accident, but note that plaintiff has claimed lost future wages in the amount of $294,372.00 and contend that they should be allowed to question plaintiff with regard to his marijuana use and its impact on his ability to secure and maintain employment.  Further, they argue, "the toxicology report should also be allowed into evidence to show that Mr.

---

[14]THC stands for Tetrahydrocannabinol, a psychoactive chemical found in marijuana.

Edwards had not terminated his use of marijuana at anytime prior to the accident at issue." (doc. 81, pp. 2-5).

Defendants offer no evidence suggesting that plaintiff's marijuana use would have impacted his future income in the absence of this accident. More importantly, there is no showing that plaintiff's marijuana use would render the calculation of lost future wages inaccurate.[15] Thus, the evidence presents very limited probative value.

Evidence of past marijuana use, and particularly the toxicology report would, however, present a very significant danger of unfair prejudice, confusion of the issues, or misleading the jury.[16] The court therefore concludes that the danger of unfair prejudice, confusion of the issues and misleading the jury substantially outweigh the probative value of the toxicology report and evidence of marijuana use by the plaintiff. Therefore, all evidence pertaining to plaintiff's use of marijuana is inadmissible at trial.

## CONCLUSION

Accordingly, the motion by defendants to exclude the testimony of Thomas Truss (doc. 64) is hereby **GRANTED.** The alternative motion by defendants to exclude the testimony of Thomas Truss insofar as it concerns the "visibility test" of

---

[15]If, as defendants assert, plaintiff has a long-term history of marijuana use, then any calculation of lost future wages that is based on historical data would inherently reflect the effect of marijuana use.

[16]For example, the jury might assume that marijuana use had impaired plaintiff's judgment at the time of the accident.

16

January 16, 2008 (doc. 65) is hereby **GRANTED**.  The motion by defendants to exclude the supplemental expert report of Kelley Adamson dated June 25, 2008 and the DVD of the visibility study conducted on June 22, 2008 (doc. 79) is hereby **GRANTED.**  The motion by defendants to exclude the testimony of plaintiff's expert, Kelley Adamson, (doc. 69) is hereby **DENIED**.  The motion by defendants to exclude a portion of the testimony of plaintiff's vocational rehabilitation expert, Stephanie Chalfin, (doc. 73) is hereby **DENIED**.

The motion by plaintiff to exclude the testimony of defendants' expert, William Nalle, (doc. 78) is hereby **DENIED**.  Counsel shall, however, insure that the witness confines his testimony to matters within the field of accident reconstruction, as noted in this ruling. The motion by plaintiff to exclude medical records and testimony with regard to marijuana (doc. 74) is hereby **GRANTED**.

Baton Rouge, Louisiana, July 24, 2008.

JOHN V. PARKER
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

17